IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHERRY VIDMAR, | ) | CIV. NO. 16-00076 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING SECOND |
| | ) | AMENDED COMPLAINT |
| vs. | ) | WITHOUT LEAVE TO AMEND, |
| | ) | DOC. NO. 23 |
| HONOLULU POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND, DOC. NO. 23

## I. INTRODUCTION

Before the court is *pro se* Plaintiff Sherry Vidmar's ("Plaintiff")

Second Amended Complaint.  Doc. No. 23.  This is Plaintiff's third attempt to

state a cognizable claim for a violation of federal law.  Pursuant to Local Rule

7.2(d), the court finds this matter suitable for disposition without a hearing.

For the reasons discussed below, the court finds that the Second Amended

Complaint is frivolous, fails to state a federal claim, and that granting leave to

amend would be futile.  The court therefore DISMISSES the Second Amended

Complaint without leave to amend and directs the Clerk of Court to close the case.

## II. <u>BACKGROUND</u>

A.     **The Complaint**

On February 19, 2016, Plaintiff filed a Complaint[1] against the

Honolulu Police Department ("HPD"), which the court construed as asserting state

law tort and criminal claims, and possibly a claim under 42 U.S.C. § 1983 for

violation of a constitutional right.  Doc. No. 1, Compl.  Plaintiff alleged in part

that (1) her neighbors and/or workers/contractors in her residential condominium

building are "CRIMINALS" who conduct "24/7" camera surveillance on Plaintiff

at her home, steal items, and spray poison throughout her home[2] while she is out;

(2) HPD escorts these criminals and therefore is involved with them and/or

protects them; (3) the HPD "CHIEF'S OFICE (sic) [did] NOT FALOU

PROTOCAL" (sic); and (4) Plaintiff's cat and bird died in her home from the

poisoning.  *Id.* at 1-2.

Plaintiff attached HPD incident reports in which she complains of

murder, burglary, an unspecified non-criminal incident, and missing items, and

that include typed notations that Plaintiff "appeared mentally unstable, had filed

---

[1]  Plaintiff also filed an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP"), which the court granted on March 1, 2016.  Doc. No. 4.

[2]  The Complaint specifically alleged that "DEADLY POIZEN" (sic) was sprayed in her refrigerator, freezer, microwave, dishes, pots and pans, ceiling, drapes, floor, bed, chair, on her clothes, on her food, and on everything she owns.  Doc. No. 1, Compl. at 2.

numerous police reports about the same issue but insisted on making a report," and

"suffers from mental instability and paranoia."  Doc. No. 1-1, Pl.'s Ex.

Handwritten on some of the reports are the words "SLANDER AND LIBEL to

RUIN MY REPUTATION," and "ASOLT & BATERY" (sic).  *Id.*

On March 1, 2016, the court dismissed the Complaint as frivolous

and for failure to state a claim, and granted Plaintiff leave to amend.  Doc. No. 4.

The court instructed Plaintiff that an amended complaint must include *short, plain*

*statements* telling the court:

> (1) the treaty, constitutional right, or statutory right
> Plaintiff believes was violated; (2) the specific basis of
> this court's jurisdiction; (3) the name of the defendant
> who violated that right; (4) exactly what that defendant
> did or failed to do; (5) how the action or inaction of that
> defendant is connected to the violation of Plaintiff's
> rights; and (6) what specific injury Plaintiff suffered
> because of that defendant's conduct.

*Id.* at 13.  The court further advised Plaintiff that she "must repeat this process for

each person or entity that she names as a defendant," and warned her that "[i]f

Plaintiff fails to affirmatively link the conduct of each named defendant with the

specific injury she suffered, the allegation against that defendant will be dismissed

for failure to state a claim."  *Id.*

3

**B.     The Amended Complaint**

Between May 16 and 26, 2016, Plaintiff filed six separate documents

that the court construed together as an Amended Complaint.  Doc. Nos. 11-16.

The Amended Complaint exceeded two hundred pages, including exhibits, and

consisted of a hodgepodge of injustices stretching back thirty years that Plaintiff

has allegedly suffered at the hands of the HPD, the City and County of Honolulu

(the "City"), Honolulu Mayor Kirk Caldwell ("Mayor Caldwell"), and others

including the Honolulu Police Commission ("HPC"), the Honolulu Department of

the Prosecuting Attorney ("DPA"), individual HPD officers, Oceanic Time Warner

Cable ("OTWC"), and the Honolulu Fire Department's ("HFD") HAZMAT

response team.  Doc. Nos. 11-16.  However, only HPD, the City, and Mayor

Caldwell were named as Defendants.  Doc. Nos. 11-13.  And the Amended

Complaint alleged that all parties are citizens of Hawaii.  Doc. No. 12 at 2.

The Amended Complaint asserted state law tort and criminal claims,

and claims for violation of constitutional rights including equal protection based

on race under 42 U.S.C. § 1983.  *See id.*

Throughout the Amended Complaint, Plaintiff alleged that

Defendants and others "FAILED TO HELP ME."  Doc. No. 13 at 2.  For example,

(1) the HPC allegedly failed to help Plaintiff in response to her complaints against

4

HPD, (2) the DPA declined to prosecute five cases on behalf of Plaintiff based on alleged crimes and injustices over the years, and failed to provide her access to their computer files on those cases, (3) Mayor Caldwell put "'THINGS BIFOR (sic) PEOPLE;' REFUSE TO HELP ME/US, HUMAN RACE, MAKE US SUFFER, TORCHERING (sic) HOMLES (sic) TO DEATH, DISCRIMINATION; COLOR RACE.  CORAPTION (sic)."  *Id.*  In addition, the Amended Complaint alleged that (1) Defendants favor Japanese and Polynesians over white United States citizens, as evidenced by the sweeps of homeless camps, taking white people's possessions, but allowing Polynesians to keep their tents and other possessions; (2) Mayor Caldwell denies United States citizens dignity and equal protection against discrimination -- "EVERYONE HAS THE RIGHT TO OWN PROPERTY!"; (3) Mayor Caldwell instructs "THEM" to sweep away homeless people's possessions and "CHASE THEM [around] UNTIL . . . DEATH."  Doc. No. 12 at 2.

Further, OTWC, allegedly with HPD's assistance, installed an alarm system in Plaintiff's condominium building with a 24/7 surveillance camera, stole Plaintiff's cable box, and disabled her internet connection.  Doc. No. 13 at 9. Plaintiff alleged that through this system, others are spying on her and poisoning her home.  *Id.*  Despite her numerous reports to HPD over the years documenting

property damage, theft, entry into a motor vehicle, forgery, and murder through poison, HPD and her condominium property manager discriminated against her by spreading false rumors that Plaintiff is mentally unstable and paranoid.  *Id.* at 19.

On January 6, 2016, Plaintiff attended an HPC meeting, but HPC allegedly did not want to help her because she is not Japanese.  *See* Doc. No. 12 at 3; *see also* Doc. No. 12-3, HPC Minutes of January 6, 2016 meeting.  On February 4, 2016, Plaintiff called 911 allegedly requesting a HAZMAT response to test the poison in her home.  Doc. No. 14-11.  As alleged, HPD officer Pahia Lewis responded in addition to the HAZMAT team, demanded Plaintiff's keys to her condo, threatened to arrest her if she did not provide them, "threw [her] down on the bench and grabbed [her] keys and told the fireman to come with him."  *Id.*  On May 6, 2016, Plaintiff went to the DPA seeking copies of computer files on several cases she says the DPA denied to prosecute, but instead was issued a trespass warning and escorted off the property by HPD.  *See* Doc. No. 12 at 3; *see also* Doc. No. 12-2.

Among the documents attached to the Amended Complaint are numerous HPD Incident Reports, *see, e.g.*, Doc. Nos. 14-2 to 14-6, 14-8, 14-9, 14-12; photos of Plaintiff, her business cards, and unidentified individuals, Doc. No. 15; quotations from the Bible with photos of bright lights in a night sky, *id.*; and

photos of Plaintiff's high blood pressure readings, items from her condo that are allegedly poisoned, the air conditioning system through which the poison allegedly is sprayed, the HAZMAT incident, and her missing cable/internet items, Doc. No. 13-1.

On June 20, 2016, the court dismissed the Amended Complaint as frivolous and failing to state a claim. Doc. No. 20 ("the June 20 Order"). The June 20 Order explained that "to the extent Plaintiff bases a constitutional claim on the theory that HPD is torturing Plaintiff through its involvement with unnamed others' surveillance of her and spraying of deadly poison throughout her residence, such claim is frivolous." *Id.* at 12. The June 20 Order further found that the Amended Complaint "in its entirety -- as to both federal and state law claims -- fail[ed] to comply with [Federal Rule of Civil Procedure] 8." *Id.* at 12-13. And the June 20 Order found that the Amended Complaint failed to allege sufficient *facts* to plausibly suggest a claim against the City or Mayor Caldwell. *Id.* at 14-17.

In granting Plaintiff leave to amend, the court explained that to state a § 1983 claim, she must allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law." *Id.* at 14 (citation omitted). The June

7

20 Order further explained that to state a § 1983 claim against the City, Plaintiff must allege that a particular constitutional violation was "caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Id.* at 15 (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citation omitted).

In addition, the court again explained that Plaintiff must comply with Federal Rule of Civil Procedure 8's requirements as to each defendant. If not, allegations against that "defendant will be dismissed for failure to state a claim." *Id.* at 18-19. The June 20 Order further explained that "Plaintiff should *not* attach voluminous documents and photos to the Second Amended Complaint and expect the court and Defendants to guess what claims those documents and photos support. Nor should Plaintiff submit evidence at this stage of the litigation." *Id.* at 18-19. And finally, the court directed the Clerk of Court to mail a copy of the court's approved civil rights complaint form and instructions to Plaintiff. *Id.* at 19.

///

///

8

## C.    The Second Amended Complaint

On July 22, 2016, Plaintiff filed her Second Amended Complaint ("SAC").  Doc. No. 23.  The SAC asserts the same state law tort and criminal claims asserted in prior complaints, as well as new claims for violation of constitutional rights to (1) privacy, (2) equal protection based on race, and (3) protection, under a creation of danger theory.[3]  These claims are asserted against some or all of the following Defendants:  (1) HPD "from the Deputy Chief down"; (2) HPD Waikiki Substation sergeants and officers on duty; (3) HPD 911 Emergency Response; (4) unnamed HPD officers; (5) Inn on the Park Resident Manager Kevin Kisaw; (6) Louise Alina, landlord to the condo unit next to Plaintiff's unit; (7) OTWC; (8) HPD Officer Lewis; (9) 911 Emergency HFD HAZMAT response team; (10) HPD Detective Carreira Marino; (11) the HPC, and HPC Chair Ronald I. Takea; (12) the DPA; (13) T. Santiago #3470; (14) S. Siu #711; (15) HPD Sergeant Ono; and (16) Mayor Caldwell.  *Id.* at PageID ## 316-331; *id.* at Pl.'s Exs. 4, 7, 9-13, 15, 17-18.

---

[3]  The Constitution protects an individual's liberty interest in her own bodily security, but the State's failure to protect that interest does not violate the Fourteenth Amendment unless a valid exception applies.  *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 846 (9th Cir. 2011).  The SAC asserts a failure to protect claim based on the state-created danger exception.

These claims appear to be loosely connected by allegations that each of these Defendants is part of one or more related conspiracies against Plaintiff causing her harm.  Although Plaintiff separated allegations against particular Defendants and in connection with separate groupings of claims, there is significant overlap.

The constitutional claims appear to be asserted against HPD and its employees, Kisaw, Alina, OTWC and its employees, HFD,  HPC, Taketa, DPA, and/or Mayor Caldwell, and are based on the same general allegations of wrongdoing in connection with (1) dismantling Plaintiff's security system, internet, and TV service; (2) reprogramming Plaintiff's systems through her neighbor's unit -- thereby providing others in the first floor control area of her condominium building 24/7 surveillance of Plaintiff's home, and enabling criminals to commit burglary and vandalism, including the spraying of poison throughout Plaintiff's home; (3) HPD's failure to prevent, stop, or investigate these and many other crimes over many years; (4) DPA's failure to prosecute cases based on some of these crimes over the years; (5) HPC's and Mayor Caldwell's failure to address Plaintiff's complaints against the HPD and DPA; (6) the City's 911 emergency response systems and HFD HAZMAT team's failure to respond to Plaintiff's complaints and calls for help; and (7) Mayor Caldwell's sweeps of the

10

homeless in Honolulu.  The SAC alleges that most of these wrongs were done through a series of discriminatory conspiracies -- based on Plaintiff not being Japanese -- involving various Defendants.  Attached to the SAC are photos, copies of jury instructions outlining a constitutional right to protection claim based on a creation of danger theory, HPD incident reports, HPC Minutes, trespass warnings, and copies of the Declaration of Independence, Amendments to the United States Constitution, and a publication from the ACLU of Hawaii Foundation titled "Homelessness in the City and County of Honolulu:  Know your Rights!"  *Id.*, Pl.'s Exs. 1, 5-6, 8, 14, 16, 19-24.

Plaintiff seeks general, special, and punitive damages, as well as injunctive relief -- sealing her home, investigating the specific type of poison, the return of her property, provision of medical treatment and a safe place to live, ending the harassment, a review of the criminal complaints the DPA failed to prosecute, various investigations, provision of homes for the homeless, and an end to the Mayor's sweeps of the homeless.

Additionally, the SAC asserts a new claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[4]

---

[4]  Under *Bivens*, a plaintiff may sue a federal actor in his or her individual capacity for damages for violating the plaintiff's constitutional rights.  403 U.S. at 397.

11

against the Social Security Administration ("SSA") and an unnamed SSA supervisor/manager in both an official and individual capacity. Ex. 2 at PageID ## 334-35. This claim is based on allegations that on August 31, 2012, and for the past 20 years, SSA caseworker "Ms. Watanabe," discriminated against Plaintiff by fraudulently altering her bank statements and/or falsely representing to Plaintiff that if she took out a bank loan to cover dental work it would not affect her SSI benefits, and these actions led to a denial of Plaintiff's SSI benefits. *See id.*, Pl.'s Ex. 2. Although Plaintiff allegedly appealed and won her case against the SSA, getting her benefits restored, she did not win punitive damages. For this claim, Plaintiff seeks an award of punitive damages. *Id.*[5]

## III. <u>STANDARDS OF REVIEW</u>

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a)[6] to mandatory screening, and order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief."

---

[5] Additionally, on August 23, 2016, Plaintiff filed a "Supplement" to the SAC. Doc. No. 28. The Supplement does not (1) assert a new federal claim, (2) assert new allegations related to federal claims asserted in the SAC, or (3) add new Defendants to existing federal claims asserted in the SAC. Accordingly, the Supplement has no bearing on the court's dismissal of all federal claims, and is DISMISSED, along with state law claims asserted in the SAC, without prejudice to refiling in state court.

[6] Section 1915(a) governs IFP proceedings.

28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir.

2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires"

the court to sua sponte dismiss an *in forma pauperis* complaint that fails to state a

claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding

that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

      A complaint "is 'frivolous' where it lacks an arguable basis either in

law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[The] term

'frivolous,' . . . embraces not only the inarguable legal conclusion, but also the

fanciful factual allegation."). When determining whether to dismiss a complaint

as "frivolous," the court need not "accept without question the truth of the

plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) ("[A]

finding of factual frivolousness is appropriate when the facts alleged rise to the

level of the irrational or the wholly incredible.").

      And to avoid dismissal for failure to state a claim, the court must set

conclusory factual allegations aside, accept non-conclusory factual allegations as

true, and determine whether these allegations state a plausible claim for relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d

1061, 1065 (9th Cir. 2008). To state a claim, a pleading must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted).

Plaintiff is appearing *pro se*; consequently, the court liberally construes the SAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam)). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the

14

defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

## IV. **DISCUSSION**

### A. **The SAC is Frivolous and Fails to State a Claim**

Construed liberally, the SAC asserts numerous state law claims and claims for violation of constitutional rights, including a failure to protect, invasion of privacy, and discrimination and/or equal protection based on race under 42 U.S.C. § 1983.  But the SAC fails to correct the numerous defects identified in the court's prior orders, and improperly joins Defendants SSA and "SSA supervisor/manager."

#### *1. The SAC is Frivolous*

First, to the extent Plaintiff continues to make a constitutional claim on the theory that HPD, HPC, HFD, DPA, and/or any City official are conspiring to torture Plaintiff or place Plaintiff in danger through its involvement with, or failure to stop, others' surveillance of her and spraying of deadly poison throughout her residence, such claim is frivolous.  *See, e.g.*, *McGinnis v. Freudenthal*, 426 F. App'x 625, 628 (10th Cir. June 10, 2011) (affirming dismissal

of frivolous complaint alleging that the plaintiff was subjected to "torture by digital electromagnetic waves and other clandestine methods"); *Mendes v. United States*, 88 Fed. Cl. 759 (Fed. Cl.), *app. dism'd*, 375 F. App'x 4 (Fed. Cir. 2009) (upholding dismissal of frivolous complaint alleging that "zealot, fanatical women" employed by the FBI and CIA used "laser beam technology" against plaintiff); *Cain v. City of Ventura*, 2011 WL 4403290, at *1 (C.D. Cal. July 7, 2011) (collecting cases); *see also* Doc. No. 20, the July 20 Order at 12.

### 2.    The SAC Fails to State a Constitutional Claim Against HPD, HPC, HFD, and/or DPA

Second, the SAC fails to state a constitutional claim against HPD, HPC, HFD, and/or DPA as official departments of the City.[7]  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  Although "Congress *did* intend

---

[7]  The court considers claims against HPD, including HPC, HFD, and DPA to be against the City.  *See PJY Enter., LLC v. Kaneshiro*, 2015 WL 4041524, at *1 (D. Haw. June 30, 2015) (noting claim against prosecuting attorney as a City official); *Souza v. Silva*, 2014 WL 2452579, at *3 (D. Haw. Mar. 30, 2014) (recognizing that "[a]n employee of the Honolulu Fire Department . . . is also an employee of the City."); *Dowkin v. Honolulu Police Dep't.*, 2010 WL 4961135, at *3 (D. Haw. Nov. 30, 2010) (concluding that because "HPD is not an independent legal entity . . . [t]he court will treat Plaintiff's claims against the HPD as claims against the City") (citations omitted).

municipalities and other local government units to be included among those persons to whom § 1983 applies," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipality can only be liable "for its own" constitutional violations. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (quoting *Monell*, 436 U.S. at 683).

That is, § 1983 does not impose liability on municipalities for constitutional violations committed by its employees under the theory of respondeat superior. Rather, "*Monell* teaches that [a municipality] may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *Id.* at 817. "[T]he constitutional violation must be caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). In other words,

> Local governing bodies can be held liable . . . where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

> decision officially adopted and promulgated by that
> body's officers," or where the action is made "pursuant
> to governmental 'custom' even though such a custom has
> not received formal approval through the body's official
> decisionmaking channels."

*Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014) (quoting *Monell*, 436

U.S. at 690-91) (emphasis omitted).  "An official municipal policy . . . 'includes

the decisions of a government's lawmakers, the acts of its policymaking officials,

and practices so persistent and widespread as to practically have the force of

law.'"  *Tsao*, 698 F.3d at 1144 (quoting *Connick v. Thompson*, 563 U.S. 51, 61

(2011)).

Here, the SAC fails to allege sufficient facts to plausibly suggest a

§ 1983 claim against the City.  Not only are the allegations centered on the

fanciful theory that the HPD, HPC, HFD, and DPA are conspiring with or

protecting persons who are torturing Plaintiff with 24/7 home surveillance and the

spraying of deadly poison, the SAC fails to identify -- much less allege -- any

applicable "policy statement, ordinance, regulation, or decision officially adopted

and promulgated" by HPD, HPC, HFD, DPA, or any of its policy-making officers.

*See Jackson*, 749 F.3d at 762.  Nor does the SAC explain how a policy, custom, or

practice amounts to deliberate indifference to Plaintiff's constitutional civil rights,

or explain how such policy, custom, or practice was the moving force behind a constitutional violation.

### 3. The SAC Fails to State a Constitutional Claim against HPD, HPC, HFD, and DPA officials

Third, the SAC fails to state a constitutional claim against any HPD, HPC, HFD, and DPA official in either an official or individual capacity.

#### a. Official capacity

The law is well-settled that "[c]laims against government officials in their official capacities are really suits against the government employer." *De Occupy Honolulu v. City & Cty. of Honolulu*, 2013 WL 2284942, at *5 (D. Haw. May 21, 2013) (quoting *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002)). Thus, for the reasons set forth above, the SAC fails to state a claim against individual HPD, HPC, HFD, and DPA officials in an official capacity.

#### b. Individual capacity

To state a claim against a government official in an individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of [Plaintiff's] federal right." *De Occupy Honolulu*, 2013 WL 2284942, at *5 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The SAC asserts violation of three constitutional rights: (1) equal protection based on race;

19

(2) privacy; and (3) failure to protect, but fails to allege facts to support any of these claims against a HPD, HFD, HPC, or DPA official in an individual capacity.

> i.      The SAC fails to state an equal protection claim

The Equal Protection Clause of the Fourteenth Amendment guarantees that the government treat similar individuals in a similar manner. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state a § 1983 claim for violation of the Equal Protection Clause, Plaintiff must "show that the defendants acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

Here, Plaintiff fails to allege that she was treated differently from other *similarly situated individuals* or other *facts* that would support an inference that Defendants intentionally discriminated against her on the basis of her race. *See Jones v. City of Los Angeles*, 2009 WL 3711662, at *9 (C.D. Cal. Oct. 30, 2009) ("Plaintiffs make only the most general conclusory allegations that Defendants' conduct was motivated by their race.  Such conclusory allegations are insufficient."); *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 & n.3 (9th Cir. 1984) (affirming dismissal of § 1983 claim finding conclusory allegations of discrimination against African-Americans to be "unsupported by any facts as to

how race entered into any decisions").  Rather, Plaintiff alleges only that City

departments and officials would not help her because she is not Japanese, stating

that all Japanese are against whites.  Such threadbare and conclusory allegations

do not suffice to support an inference of purposeful discrimination.  Accordingly,

the Court finds that Plaintiff has failed to state a claim against Defendants based

on Fourteenth Amendment Equal Protection.

ii.    The SAC fails to state a privacy claim

To state a claim for invasion of privacy, based on the alleged home

surveillance and spraying of poison, at a minimum, Plaintiff must allege that City

officials installed and are conducting the surveillance and spraying.  *See West*, 487

U.S. at 48 (explaining that a § 1983 claim requires an allegation that a violation

was committed by a person acting under color of state law); *see also United States*

*v. Pascual*, 2016 WL 4211784, at *2 (N.D.N.Y. Aug. 10, 2016) ("The Fourth

Amendment protects the right of private citizens to be free from unreasonable

*government* intrusions into areas where they have a legitimate expectation of

privacy.") (quoting *United States v. Newton*, 369 F.3d 659, 662 (2d Cir. 2004))

(emphasis added).  The SAC alleges only that City officials failed to prevent

OTWC from installing/reprogramming a system that allows *others* to watch her

home 24/7 and spray poison.  Thus, the SAC fails to meet this standard.

      iii.    The SAC fails to state a failure to protect claim

Generally, "members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 197 (1989) (other citation omitted). An exception to this rule is known as the "danger creation" exception. *Arnold v. Cty of Alameda*, 2016 WL 4074484, at *4 (N.D. Cal. Aug. 1, 2016) (citing *Grubbs*, 974 F.2d at 121). This exception "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Grubbs*, 974 F.2d at 121.

To successfully allege a state-created danger, a plaintiff must allege "(1) 'affirmative conduct on the part of the [City] in placing the plaintiff in danger' and (2) the [City] must have acted with 'deliberate indifference' to a 'known or obvious danger.'" *Arnold*, 2016 WL 4074484, at *5 (N.D. Cal. Aug. 1, 2016) (quoting *Patel v. Kent School Dist*., 648 F.3d 965, 974 (9th Cir. 2011)). "Deliberate indifference . . . requires a culpable mental state, meaning that the state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* (citing *Campbell v. State of Washington Dep't of Soc. & Health Servs*., 671 F.3d 837, 846 (9th Cir. 2011)) (internal quotations omitted).

Here, the SAC alleges that HPD and HFD HAZMAT responded to at least some of Plaintiff's complaints.  *See* Doc. No. Pl.'s Ex. 5 (photos of HPD officer and HAZMAT response at Plaintiff's condo building in response to her calls about the poison); Pl.'s Ex. 8 (HPD incident report on Plaintiff's complaint of murder based on spraying of poison in her unit).  And through the Minutes from a January 6, 2016 HPC Regular Meeting, the SAC alleges that HPD personnel met with Plaintiff regarding her complaints about poison, the lack of adequate HPD response, and physical harm to Plaintiff:

> Chief Kealoha informed commissioners that a detective from the HPD's Professional Standards Office [met] with Ms. Vidmar to discuss her concerns [that her home is poisoned, her skin itches, and her requests to investigate went unanswered].  Former Deputy Chief Dave Kajihiro also met with her to discuss her concerns.

Pl.'s Ex. 19.

Thus, the SAC clearly alleges that HPD and HFD were aware of Plaintiff's complaints regarding OTWC's work on the surveillance system through which poison was allegedly sprayed into her home.  But the SAC fails to allege the required culpable mental state of any HPD, HFD, or other City official.  That is, the SAC fails to alleged that any City official *recognized*, or believed, that the alleged surveillance/spraying system posed an *unreasonable* risk to Plaintiff and

23

actually *intended* to expose Plaintiff to such risk without regard to the consequences to her. *See Arnold*, 2016 WL 4074484, at *5. Accordingly, the court finds that the SAC fails to assert a failure to protect claim.

### 4. The SAC Fails to State a § 1983 Claim Against Private Defendants

To state a claim under § 1983, there must be "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 ("[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law [under § 1983]."). This requirement "excludes from [§ 1983's] reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).

A private party may, under limited circumstances, act under color of state law when "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ("A private individual's action may be 'under color of state law' where there is 'significant' state involvement in the action.") (quoting *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997)). The Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion;

and (4) governmental nexus.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) *(quoting Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id*. But under any of the four tests, "the central question remains whether the alleged infringement of federal rights [is] fairly attributable to the government." *Id.* at 1096 (internal quotations omitted).

To establish joint action, a plaintiff must show willful, joint participation between the state and a private actor in which "the state has so far insinuated itself into a position of interdependence with the private [actor] that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011) (citations and quotations omitted).

Here, even liberally construed, the SAC fails to allege any *facts* showing that Defendants OTWC, Kisaw, Alina, Santiago, and/or Siu[8] met one of the four tests identifying state action, or is otherwise a state actor. The SAC fails

---

[8] It is not clear whether Santiago and Siu are City employees or private individuals. If they are City officials, the SAC fails to state a § 1983 claim against them as set forth above. Because they may not be City officials, the court includes them in its analysis of § 1983 claims asserted against private Defendants.

to allege the required "substantial degree of cooperation," *Todd v. Whitaker*, 2016 WL 4216777, at \*2 (D. Or. Aug. 8, 2016), or coordinated action between the City and Defendants OTWC, Kisaw, Alina, Santiago, and/or Siu to establish joint action. Nor does the SAC allege that the City was in a position of interdependence with these Defendants, *i.e.*, that the City knowingly accepted benefits from the allegedly unconstitutional actions of any of these Defendants. At best, the SAC alleges that Kisaw and an OTWC manager arranged for OTWC to do work in Plaintiff's condominium building, that on March 14, 2014, HPD allowed the work to occur rather than arrest OTWC workers, and that HPD escorted OTWC workers out of the condo building. And the SAC's allegations that some or all of these private Defendants conspired with HPD or City officials are purely conclusory.

The SAC falls far short of alleging facts sufficient to show that any of these private Defendants was a state actor. A such, the SAC fails to state a § 1983 claim against Defendants OTWC, Kisaw, Alina, Santiago, and Siu.

### 5. *The SAC Fails to State a Claim Against Mayor Caldwell*

The SAC fails to state a claim against Mayor Caldwell in either his official or individual capacity. Here again, the SAC fails to explain how a Mayor Caldwell or City law, policy, custom, or practice amounts to deliberate

indifference to *Plaintiff's*[9] constitutional rights, or explain how such policy, custom, or practice was the moving force behind a constitutional violation. That is, the SAC fails to include specific facts about a policy, custom, or practice, or even what individual City officials did or did not do on specific dates, from which to reasonably infer that a *policy, custom, or practice* caused a violation of *Plaintiff's* specific constitutional right. Nor does the SAC allege any facts showing that Mayor Caldwell, individually, deprived Plaintiff of a specific constitutional right. Allegations that Plaintiff called Mayor Caldwell's office and asked his secretary for the Mayor's help with the alleged discrimination, conspiracy, and fraud by the HPD and DPA, but that Mayor Caldwell "failed to help," do not suffice. *See Iqbal*, 556 U.S. at 678-79 (explaining that "mere conclusory statements" or factual allegations that only permit the court to infer "the mere possibility of misconduct" are insufficient to state a plausible claim).

### 6. *The SAC Violates Federal Rules of Civil Procedure 18 and 20*

Finally, Plaintiff's *Bivens* claim is based on allegations that are completely unrelated to her other claims and are asserted against Defendants who

---

[9] Although Plaintiff identifies Mayor Caldwell's approval of homeless sweeps and the passing of a "Sit/Lie" City ordinance -- restricting the prolonged sitting or laying on sidewalks, which has limited areas that people may congregate for long periods of time -- Plaintiff fails to allege that *she* is homeless. To the contrary, her claims primarily rest on allegations of vandalism to her *home*.

are not named in connection with her other claims.  As such, the SAC violates

Federal Rules of Civil Procedure 18 and 20.

Under Rule 18(a), governing joinder of claims, a plaintiff may bring

multiple claims, related or not, in a lawsuit against a single defendant.  To name

different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20,

governing joinder of parties.  Under Rule 20(a)(2), permissive joinder of multiple

defendants in a single lawsuit is allowed only if: (1) a right to relief is asserted

against each defendant that relates to or arises out of the same transaction or

occurrence or series of transactions or occurrences; and (2) any question of law or

fact common to all defendants arises in the action.  *See Coughlin v. Rogers*, 130

F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Ins. Co. of N. Am.*, 623

F.2d 1371, 1375 (9th Cir. 1980).  Unrelated claims involving different defendants

belong in different suits.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007);

*Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001).

Plaintiff's *Bivens* claim for damages based on the allegedly

discriminatory falsification of bank statements, leading to a denial of Plaintiff's

SSI benefits, is unrelated to her claims against the remaining Defendants.  In short,

the *Bivens* claim is a clearly separate violation allegedly done by a different

individual that did not arise from the same transaction or occurrence or series of

transactions or occurrences as the remaining claims.  Thus, the SSA and its employees cannot be joined as Defendants in this action.

In sum, the SAC is frivolous and fails to state a plausible federal claim.  That is, Plaintiff's federal claims are either fanciful or are based on events that do not appear to have violated Plaintiff's constitutional rights such that Plaintiff cannot possibly prevail.  Because Plaintiff has had multiple opportunities to attempt to allege facts supporting a cognizable federal claim based on the same underlying events, granting leave to amend yet again would be futile.

Accordingly, Plaintiff's federal claims are DISMISSED without leave to amend.

## B.    The Court Declines Supplemental Jurisdiction over State Law Claims

A federal court has subject matter jurisdiction "either through diversity jurisdiction" pursuant to "28 U.S.C. § 1332" or through "federal question jurisdiction" pursuant to "28 U.S.C. § 1331."  *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).  And under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and

weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity.'" (quoting *Carnegie Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 350 (1988))).  "[I]n the usual case in which all federal-law

claims are eliminated before trial, the balance of factors will point towards

declining to exercise jurisdiction over the remaining state-law claims."  *Acri v.*

*Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *Curiel v.*

*Barclays Capital Real Estate Inc.*, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2,

2010) (reasoning that the "primary responsibility for developing and applying state

law rests with the state courts" and -- after dismissing federal law claims --

declining to exercise supplemental jurisdiction over state law claims sounding in

wrongful foreclosure).

There is no basis in the SAC for diversity jurisdiction.  Thus, because

the dismissed § 1983 and *Bivens* claims provide the only basis for federal

jurisdiction, the court declines supplemental jurisdiction over the state law claims

and DISMISSES them without prejudice to filing in state court.[10]  To be clear, the

---

[10]  28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

court is not deciding whether the SAC states a plausible claim under state law, and this order does not prevent Plaintiff from pursuing a state law claim in state court.

## V.  <u>CONCLUSION</u>

For the reasons stated above, the court DISMISSES Plaintiff's Second Amended Complaint without leave to amend.  The Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 26, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Vidmar v. Honolulu Police Dep't, et al.*, Civ. No. 16-00076 JMS-KSC, Order Dismissing Second Amended Complaint Without Leave to Amend, Doc. No. 23